STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ALISON TOWEY, DEFENDANT-APPELLANT.

Argued October 12, 1988—Decided January 31, 1989.

70

*Stephen W. Kirsch* argued the cause for appellant (*Francis J. Hartman,* attorney).

*Carol M. Henderson,* Deputy Attorney General, argued the cause for respondent (*Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

STEIN, J.

In this case we must determine whether a trial court may impose the maximum parole ineligibility term permitted by the Graves Act, *N.J.S.A.* 2C:43–6c, in conjunction with the minimum base term within the presumptive sentencing range for aggravated manslaughter, a first-degree crime. Thus, the narrow legal issue before us is whether the Graves Act, in the context of the sentencing philosophy reflected in our Code of Criminal Justice, contemplates any limitations on a sentencing court's exercise of discretion in setting the length of a mandatory parole ineligibility term. On a broader scale, we also address the essential factors that bear on the length of any period of

parole ineligibility imposed by a sentencing court for Graves Act or non-Graves Act offenses.

This defendant pleaded guilty to the first-degree crime of aggravated manslaughter and was sentenced to a custodial term of ten years, the minimum term in the presumptive sentencing range for first-degree crimes. *N.J.S.A.* 2C:43–6a(1). The court then imposed the maximum parole ineligibility period allowable under the Graves Act, one-half of the custodial term, or five years. The Appellate Division heard the appeal on its sentencing calendar, *R.* 2:9–11, and affirmed defendant's sentence. We conclude that on this record the Graves Act sentence has not satisfactorily been reconciled with the sentence imposed for aggravated manslaughter. Accordingly, we reverse and remand for resentencing.

## I.

Defendant's testimony at the plea hearing and the information contained in the pre-sentence report fully support the following account of the material facts. Defendant shot and killed her husband, William Towey, at approximately 11:30 p.m. on October 10, 1985. Earlier that day, defendant had visited a friend, Susan Petrucci, with whom she drank approximately two quarts of a combination of Sambucca and Vodka. She also ingested methamphetamines between the hours of 5:00 and 10:00 p.m.

Mrs. Towey had arranged to spend time that evening with Robert Morella, a friend of her husband, with whom she was engaged in an extramarital relationship. Morella proceeded on foot to the Towey residence from his place of employment. Defendant was not at home when he arrived. He waited on the front porch until she returned at about 11:00 p.m. According to Morella, defendant was "rowdy" and upset.

The two entered the house and commenced a conversation regarding a man identified only as "Henry." Defendant complained to Morella that "Henry" and Morella's wife would cause

her to go to jail. (The record does not disclose the reason for defendant's apprehension about imprisonment.) Defendant then left the room and returned with a revolver. Defendant held the weapon while she spoke with Morella, and at one point fired a shot into the living room floor. She later left the house with the gun, fired three more shots, and then returned to the house and reloaded the gun.

At approximately 11:20 p.m., defendant called Mrs. Morella to complain about "Henry." Morella stated that after the telephone call defendant told him that she was going to shoot his wife. Defendant subsequently retracted that threat.

Defendant then called Susan Petrucci, to ask if she could take her gun to Ms. Petrucci's house. At approximately 11:30 p.m., defendant telephoned her husband at work to advise him that she was going to remove the gun, and some marijuana and hashish, from their home. Defendant's husband immediately left work. When he arrived home an argument ensued, since decedent did not want his wife to leave the house with a gun while she was in an intoxicated state. During the argument defendant and her husband moved about the living room and kitchen. At one point, while defendant was backing into the kitchen and her husband stood several feet away, she fired a shot. Decedent fell to the floor. Morella called the police while defendant attempted to administer first aid. At defendant's request, Morella took the gun, the holster, and the ammunition for the gun outside the house and threw them in the direction of a lagoon near the Towey residence.

Two days later defendant attempted suicide at the home of a friend by slashing her neck with a razor blade. Defendant was hospitalized for one day at the Southern Ocean County Hospital. She then was transferred to the Institute of Pennsylvania Hospital for psychiatric treatment.

A criminal complaint for murder was filed against defendant approximately two weeks after her admission to the Institute. At the bail hearing, defense counsel explained defendant's

psychiatric condition, and requested that she be allowed to remain at the Institute as a condition of bail. Defendant remained at the Institute until August 18, 1986, the day before she entered a guilty plea in this case.

The trial court accepted Towey's plea to aggravated manslaughter, a Graves Act offense because of defendant's use of a firearm. *N.J.S.A.* 2C:43–6c. As part of the plea bargain, the prosecutor agreed to make no sentencing recommendation to the court, and to allow defendant to seek credit for time served at the Institute, specifically reserving the right to oppose that application.

At the sentencing hearing, Harry Zall, M.D., a board-certified psychiatrist employed as a clinical instructor of psychiatry at the University of Pennsylvania Medical School, testified that he treated defendant at the Institute, that she required intensive psychiatric therapy, and that she had responded well to treatment thus far. Thomas Sexton, a certified addiction counselor at the Institute, gave similar testimony.

The trial court, after reviewing the psychiatric testimony, the aggravating and mitigating factors, and acknowledging the receipt of letters from both the victim's and defendant's families, imposed sentence with these comments:

THE COURT: Now, I think your counsel has told you that for this particular crime, the law provides a maximum of 20 years in a custodial situation, subject, of course, to whatever may be appropriate for parole. And that, as a Graves Act offense, the Court if it gave you 20 years, could give you ten years stipulation of no parole during that period. You are aware of that, are you not?

THE DEFENDANT: Yes.

\*       \*       \*       \*       \*       \*       \*       \*

THE COURT: Very well. I don't think that kind of a sentence in this particular case is appropriate. What would normally be appropriate in this particular case, because of the fact that there are—while there are more aggravating circumstances than mitigating circumstances, there are still more —there is still more than one mitigating circumstance, and it is the first crime you've ever committed, albeit a most, most serious one.

So we would normally consider that what would be an appropriate sentence would be 15 years in a custodial situation, with no parole under Graves Act

provisions for at least for seven and one-half years. I don't think that is appropriate in—in totality.

There isn't any question either that you do require additional psychiatric treatment and psychological counseling. And I'm going to direct that whatever institution holds you, you will be eligible at the earliest possible moment for that type of treatment and counseling.

Because of the fact that there are mitigating circumstances, that there is more than one mitigating circumstance, I sentence you to ten years in the custody of the Commissioner of Corrections, with the direction that you be housed in the Women's Correctional Institution at Clinton, and that during your stay there, as quickly as may be possible, you are to be granted as much and as quick treatment, both a psychological and a psychiatric character, as may be appropriate.

There is, of course, a stipulation that I must make under the Graves Act which will prevent you for a period of years of not being eligible for parole.

Since I have reduced because of mitigating circumstances a portion of your sentence from the full 15 years recommended by the Statute to ten years, I must—because I am considering not only your position but society's, the late victim and the victim's family—order that you not be available or not be entitled to or not be eligible for parole for five years.

Thus, the trial court imposed a custodial term of ten years, the minimum term within the presumptive range of sentences for first-degree crimes, *N.J.S.A.* 2C:43–6a(1), and also imposed the maximum parole ineligibility period allowable under the Graves Act, one-half of the custodial term, or five years. Defendant was denied credit for time she spent at the Institute.

On appeal defendant contended that the sentence was inconsistent with the sentencing provisions of the Code of Criminal Justice and with the standards established by our decisional law. She also sought review of the trial court's denial of credit for time served at the Institute. An Appellate Division excessive sentence panel affirmed defendant's sentence. We granted certification. 110 *N.J.* 192 (1988).

## II.

We commence our discussion by acknowledging that neither the Graves Act, *N.J.S.A.* 2C:43–6c, nor any of the other provisions of the Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to :98–4 (Code), that authorize parole ineligibility terms provides specific criteria to guide a sentencing court in fixing the precise period

of a term of parole ineligibility. *See N.J.S.A.* 2C:43–6b (parole ineligibility term as part of sentence for any crime); *N.J.S.A.* 2C:43–7b and c (parole ineligibility term as part of sentence for extended term); and *N.J.S.A.* 2C:14–6 (parole ineligibility term for persistent sex offenders). Read literally, those provisions of the Code that authorize the imposition of parole ineligibility terms appear to vest in sentencing judges virtually unqualified discretion in setting the length of a period of parole ineligibility, within the prescribed statutory limits.

We also observe that, as a practical matter, the range of a sentencing judge's discretionary determination of the length of a parole ineligibility term is relatively circumscribed. Under the Graves Act, for example, the mandatory minimum term for all but fourth-degree crimes [1] must be fixed at or between one-third and one-half of the base term, but not less than three years. *N.J.S.A.* 2C:43–6c. Thus, for a third-degree crime that carries a presumptive sentencing range of three to five years, *N.J.S.A.* 2C:43–6a(3), the minimum three-year parole ineligibility term prescribed by the Graves Act represents, in effect, the only parole ineligibility term that a sentencing court could impose. Similarly, for a third-degree non-Graves Act offense, the mandatory minimum term cannot exceed one-half of the base term, *N.J.S.A.* 2C:43–6b, and application of that statutory limitation to the presumptive sentencing range of three to five years for third-degree crimes leaves to trial courts an extremely narrow range within which to fix the specific term of parole ineligibility.

For second-degree crimes, the scope of discretion is similarly narrow. The presumptive sentencing range is five to ten years. *N.J.S.A.* 2C:43–6a(2). Thus, on a base sentence of ten years for a second-degree Graves Act crime, the range of discretion for a sentencing judge imposing a parole ineligibility term would be

---

[1]The Graves Act sets the mandatory minimum term at eighteen months for fourth-degree crimes.

between a term of three-and-one-third years and a term of five years. If the base term is nine years or less, the scope of discretion is narrower, ranging from the mandatory minimum term of three years to a maximum of one-half the base term. For non-Graves Act second-degree crimes, the range of discretion for a parole ineligibility term on a base sentence of ten years lies between a maximum term of five years, and a minimum term of three years (anything less being essentially equivalent to a defendant being sentenced without a parole ineligibility term). *See* Sentencing Manual for Judges, Appendix A (Sept.1988).[2]

The widest range of mandatory minimum sentences exists in respect of first-degree crimes. For Graves Act offenses, the permissible parole ineligibility period ranges from a minimum term of three and one-third years and a maximum term of five years on a base ten-year sentence, to a minimum term of six and two-thirds years and a maximum term of ten years on a twenty-year base term. For non-Graves Act first-degree crimes, the range of discretion would vary from a minimum of approximately three years and a maximum of five years on a ten-year base term, to a minimum of about six years and a maximum of ten years on a twenty-year base term.

Although the Code prescribes no specific standards for fixing the precise length of parole ineligibility terms, and the range of a sentencing court's discretion is relatively narrow, we nevertheless consider whether or not that discretion is unlimited in the context of our repeated declarations that the essence of the Code's sentencing provisions lies in the pursuit of uniformity

---

[2]Appendix A to the Sentencing Manual for Judges (Sept.1988) includes a Parole Eligibility Table promulgated by the State Parole Board. The table sets forth estimated commutation credits, work credits, and minimum custody credits on sentences from one to seventy years, and also sets forth earliest and latest parole eligibility dates on any sentence. Thus, the Parole Eligibility Table assists sentencing judges in determining the effect of a mandatory minimum term on a defendant's estimated parole eligibility date calculated without a mandatory minimum term.

and the avoidance of sentencing disparity. *Compare State v. Curtis*, 195 *N.J. Super.* 354, 371 (App.Div.) ("Since this was a Graves Act offense, the 10 years of parole ineligibility [on a first-degree crime] is imposable without reference to aggravating and mitigating factors."), certif. denied, 99 *N.J.* 212 (1984) *with State v. Reed*, 215 *N.J.Super.* 105, 107 (App.Div.) ("[W]e will presume that in order to raise the ineligibility term above the mandatory minimum, * * * the sentencing judge * * * must find that the aggravating factors outweigh the mitigating."), certif. denied, 108 *N.J.* 667 (1987).

As Justice O'Hern observed in *State v. Hodge:*

The Code is a restraint upon the discretion of judges in individual cases. But there can be no justice without a predictable degree of uniformity in sentencing. We must not forget that the driving force behind sentence reform was the tragic disparity in sentences inflicted upon defendants under the old model. The loss of unfettered discretion may be the price of evenhanded justice. [95 *N.J.* 369, 379 (1984) (citations omitted).]

In resolving other sentencing issues under the Code, we have consistently focused on the Code's pursuit of "greater uniformity," *State v. Roth*, 95 *N.J.* 334, 369 (1984), to be achieved by the Code's "delicate balance between discretion and fixed sentencing." *Id.* at 365; *see State v. Dunbar*, 108 *N.J.* 80, 97 (1987); *State v. Hartye*, 105 *N.J.* 411, 417 (1987); *State v. O'Connor*, 105 *N.J.* 399, 405 (1987); *State v. Kruse*, 105 *N.J.* 354, 360, 362 (1987); *State v. Yarbough*, 100 *N.J.* 627, 635 (1985), *cert.* denied, 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986).

As we explained in *State v. Roth, supra*, 95 *N.J.* 334, the Code promotes sentencing uniformity by establishing presumptive terms for each degree of crime, *N.J.S.A.* 2C:44-1f, within the prescribed sentencing ranges set forth in *N.J.S.A.* 2C:43-6a. The sentencing court may then adjust the presumptive term upward or downward depending on its evaluation and balancing of the aggravating and mitigating factors listed in *N.J.S.A.* 2C:44-1(a) and (b). *Id.* at 359.

Although as originally enacted the Code prescribed no standards for the imposition of parole ineligibility terms, the legisla-

ture in 1981 amended *N.J.S.A.* 2C:44–1f to require a sentencing court, in imposing a mandatory minimum term in connection with either an ordinary, *N.J.S.A.* 2C:43–6b, or extended, *N.J.S. A.* 2C:43–7b, base term, to set forth on the record the aggravating factors that justify the imposition of a parole ineligibility term. *L.*1981, *c.* 290. In the same session, the legislature amended *N.J.S.A.* 2C:43–6b to preclude the imposition of a mandatory minimum term unless the sentencing court is "clearly convinced that the aggravating factors substantially outweigh the mitigating factors." *L.*1981, *c.* 569. In commenting on that legislation in *State v. Dunbar, supra,* we noted:

> The committee statements to A–1904, *L.*1981, *c.* 569, indicate that the Legislature considered the absence of statutory criteria to guide sentencing courts in making these determinations inconsistent with the "overall plan of sentencing in the Criminal Code." The Assembly Judiciary Committee statement says that the bill "fills a gap in the system of sentencing criteria, and provides that if a court wants to set a minimum sentence, it should follow the procedures appropriate to other sentencing decisions, based on the provisions of 2C:44–1f." [108 *N.J.* at 93 n. 3.]

Thus, in non-Graves Act cases the legislature conditioned the imposition of minimum terms on a court's being clearly convinced that the aggravating factors substantially outweighed the mitigating factors, and apparently intended that sentencing judges be guided, in imposing mandatory minimum terms, by the Code's aggravating and mitigating factors. In contrast, in adopting the Graves Act, *L.*1981, *c.* 31, the legislature determined that use or possession of a firearm in the course of the commission or attempted commission of certain crimes, without regard to aggravating or mitigating factors, would mandate imposition of a minimum term of imprisonment. *N.J.S.A.* 2C:43–6. Accordingly, use or possession of a firearm while committing prescribed crimes serves essentially the same function in Graves Act sentences as does the finding that aggravating factors substantially outweigh mitigating factors in non-Graves Act sentences: each is the statutory prerequisite for the imposition of *any* period of parole ineligibility, irrespective of its length.

■ Against this backdrop of statutory and decisional law emphasizing enhanced uniformity in sentencing, we cannot conclude that the legislature intended to vest trial courts with unlimited discretion in determining the specific length of a parole ineligibility term, within the statutory limits. Rather, we hold that the specific length of parole ineligibility terms, in both Graves Act and non-Graves Act cases, must ordinarily be consistent with the length of the base term imposed by the court, and with the court's evaluation of the relevant aggravating and mitigating factors. In Graves Act sentences, the length of the minimum term can also be affected by the extent of the harm threatened or caused by the defendant's use or possession of the firearm.

Since in non-Graves Act cases the sentencing court must be clearly convinced that aggravating factors substantially outweigh mitigating factors in order to impose *any* minimum term, we would expect that the longest permitted minimum term, one-half the base term, would ordinarily be imposed only on base terms at or near the top of the range for that degree of crime. Because the same balancing of aggravating and mitigating factors necessary to increase or decrease the presumptive term, *N.J.S.A.* 2C:44–1f(1), is also required to impose any minimum term in a non-Graves Act case, *see State v. Kruse, supra,* 105 *N.J.* at 362, we would anticipate a high degree of correlation between the length of the base term and the specific length of any minimum term. As noted in *Kruse,* "we expect it will be a rare case in which the sentencing court imposes a period of parole ineligibility on top of a presumptive sentence." *Ibid.* Hence, it is self-evident that in the typical non-Graves Act case, a parole ineligibility term generally would be imposed in conjunction with a base sentence greater than the presumptive term, and parole ineligibility terms at or near one-half the base sentence would be imposed only in conjunction with base terms at or near the top of the range. In any event, the sentencing court is required to set forth on the record the aggravating factors that support the imposition of a minimum

term, *N.J.S.A.* 2C:44–1f(1), and the court's explanation should be sufficient in every case to justify and, if necessary, to reconcile the lengths of the base term and minimum term imposed by the court. *See R.* 3:21–4(e). Although we have observed that "[i]t is not necessary that every sentence be a discourse," *State v. Dunbar, supra,* 108 *N.J.* at 97, we continue to expect that "the hallmark of a principled sentence will be found in the reasons stated by the court for the imposition of sentence." *Id.* at 94.

These same general principles would apply in Graves Act sentences. Since the sentencing court must weigh aggravating and mitigating factors in order to impose a sentence higher or lower than the presumptive term, we would ordinarily expect a high degree of correlation between the length of the base term and the relative severity of the parole ineligibility term. Thus, the most severe parole ineligibility terms generally would be imposed in conjunction with base terms longer than the presumptive term. However, we noted that aggravating and mitigating factors play no part in the decision to impose a minimum term in Graves Act cases. *Supra* at 80. Unlike the non-Graves Act sentences considered in *State v. Kruse, supra,* a minimum term is mandated by the Graves Act even if the court determines that the mitigating factors outweigh the aggravating factors and imposes a base term lower than the presumptive term. Thus, since the relative weight of the aggravating and mitigating factors is irrelevant to the imposition of a minimum term in Graves Act cases, it is understandable that there may be less correlation than in non-Graves Act cases between the length of the base term and the severity of the parole ineligibility term.

Since it is the possession or use of a firearm that triggers operation of the Graves Act, it is pertinent for a court to consider not only aggravating and mitigating factors in determining the length of the minimum term, but also the

extent to which injury was threatened or inflicted by the defendant's use of the firearm. Implicit in the policies underlying the Graves Act is a recognition that the use of firearms in the commission of a crime poses a grave threat to public safety. *State v. Des Marets*, 92 *N.J.* 62, 72 (1983). "These disturbing statistics confirm the obvious intent of the Graves Act to deter the use and possession of firearms by criminals for the purpose of reducing the number of persons killed or injured by such weapons." *Id.; accord State v. Gantt*, 101 *N.J.* 573, 582–83 (1986). Hence, when in the course of a Graves Act crime the presence of a firearm causes, or threatens to cause, serious injury to the victim or others, a sentencing court may appropriately consider that injury or threat of injury, along with all other pertinent factors, in fixing the length of the parole ineligibility term. Such consideration does not offend the principle that an element of the offense ordinarily is not to be weighed as an aggravating or mitigating factor. *State v. Yarbough, supra*, 100 *N.J.* at 633. It is the mere possession or use of the firearm that triggers the Graves Act minimum term. Thus, the extent to which injury is threatened or inflicted is a collateral factor, distinct from the conduct that invokes the Graves Act, that is clearly material to the length of the minimum term to be imposed.

### III.

In imposing sentence in this case, the trial court erred in two respects. First, the court sentenced defendant to a base term of ten years, the lowest sentence within the presumptive range for first degree crimes, without making an express determination that the preponderance of mitigating over aggravating factors weighed in favor of a term lower than the presumptive term. *N.J.S.A.* 2C:44–1f(1). The trial court merely observed that although there were more aggravating factors than mitigating factors, there was "more than one mitigating

circumstance." This abbreviated discussion of the aggravating and mitigating factors does not reflect the qualitative weighing process contemplated by the Code. As we observed in *State v. Roth, supra:* "The [aggravating and mitigating] factors are not interchangeable on a one-to-one basis. The proper weight to be given to each is a function of its gravity in relation to the severity of the offense." 95 *N.J.* at 368. Thus, on remand the trial court should qualitatively evaluate the aggravating and mitigating factors, explaining that evaluation on the record in sufficient detail to permit appellate review. A sentence below the presumptive term for aggravated manslaughter would be permissible only if that evaluation leads to a finding that a preponderance of mitigating over aggravating factors weighs in favor of a term lower than the presumptive term. *See N.J.S.A.* 2C:44–1f.

■ In addition, the trial court did not sufficiently explain the apparent inconsistency between a base term at the bottom of the range for aggravated manslaughter, and the maximum Graves Act sentence that could be imposed on that base term. As noted, we would ordinarily anticipate in Graves Act cases that the most severe parole ineligibility terms would be imposed in conjunction with base terms that exceed the presumptive term. *Supra* at 81–82. However, in imposing a Graves Act sentence a trial court may take into account "the extent to which injury was threatened or inflicted by defendant's use of the firearm." *Supra* at 82–83. Accordingly, even if the trial court had determined that mitigating factors preponderate over aggravating factors, a relatively severe parole ineligibility term could have been justified in this case because the use of a firearm resulted in the victim's death. That may have been the reason for the trial court's reference to "the late victim and the victim's family" when imposing the Graves Act term. On remand, the trial court should clearly reconcile on the record any apparent disparity between the base sentence and the

parole ineligibility term in a manner consistent with the principles set forth in this opinion.

## IV:

Defendant also challenges the trial court's denial of credit against her custodial sentence for the period of 312 days from October 12, 1985, to August 19, 1986, when she was a patient at the Institute of Pennsylvania Hospital. Defendant relies on *Rule* 3:21–8, which provides in part:

> The defendant shall receive credit on the term of a custodial sentence for any time he has served in custody in jail or in a state hospital between his arrest and the imposition of sentence.

When defendant voluntarily entered the psychiatric hospital after a suicide attempt on October 12, 1985, no criminal charges were pending against her. Approximately two weeks later, a criminal complaint was filed charging defendant with murder. A bail hearing in connection with the complaint was held on October 28, 1985. Defense counsel informed the court that defendant would require "extensive psychiatric assistance," and that it would be "psychologically harmful" for defendant to be removed from the hospital. Counsel requested that bail be set at $200,000, with ten percent posted, and that as a condition of bail defendant be "required to remain at this institute and further notify the Prosecutor in the event there is any change in that status." The trial court, with the State's consent, set bail as requested, subject to the condition that defendant be arraigned "immediately upon her release" from the psychiatric Institute. Defendant contends that since her confinement at the hospital after the bail hearing was a "condition" of bail, and subject to the State's consent, it was sufficiently analogous to custodial confinement to warrant an allowance of credit against her sentence.

█ It has been noted that *Rule* 3:21–8 should be liberally construed "in order to ensure that there is no possibility of a defendant actually serving more than the maximum sentence

imposed." *State v. Smeen*, 147 *N.J.Super.* 229, 233 (App.Div.), certif. denied, 74 *N.J.* 263 (1977). Nevertheless, the thrust of the Rule is to restrict credit to "custodial" confinements, either in jail or in a state hospital. Ordinarily, a defendant's confinement is custodial if it is imposed by a court, *see State v. Lee*, 60 *N.J.* 53, 58 (1972), and involuntary in the sense that a defendant is not "at liberty by an exercise of his own will to choose to leave that facility." *State v. Smeen, supra,* 147 *N.J.Super.* at 233. Thus, in *State v. Reyes,* 207 *N.J.Super.* 126 (App.Div.), certif. denied, 103 *N.J.* 499 (1986), the Appellate Division denied credit to defendant for time spent in a residential drug treatment program as a condition of probation. The court concluded that "[a]ttendance at such a program is not the equivalent of "custody" so long as there are no physical restraints and a participant retains the option to leave without committing an additional crime." *Id.* at 144.

In this case defendant entered the hospital voluntarily and remained there voluntarily. Nothing in the record suggests that defendant was confined in the Institute against her will, or that she was not free to leave. The condition imposed at the bail hearing was that she be immediately arraigned when she was released from the Institute. Under these circumstances, we do not consider defendant's confinement at the Institute to be sufficiently custodial to warrant a credit against her custodial sentence.

The matter is remanded to the Law Division for resentencing. Jurisdiction is not retained.

*For reversal and remandment* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, and GARIBALDI—6.

*Opposed* —None.