637 A.2d 1249

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JAMES A. BALFOUR, DEFENDANT–APPELLANT.

Argued December 1, 1992—Decided March 16, 1994.

31

*Laura M. LeWinn* argued the cause for appellant.

*Carol M. Henderson,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*Robert L. Sloan,* Assistant Deputy Public Defender, argued the cause for *amicus curiae,* Office of the Public Defender (*Zulima V. Farber,* Public Defender, attorney).

PER CURIAM.

This appeal concerns the interrelationship between the downgrade of the degree of a crime for sentencing and the length of the sentence actually imposed. Specifically, the issue is whether the trial court erred in accepting a plea agreement that downgraded the degree of the crime under *N.J.S.A.* 2C:44–1(f)(2) and in then sentencing defendant to the maximum term permitted in the presumptive range of the lower-degree crime under *N.J.S.A.*

2C:44–1(f)(1). The Appellate Division affirmed the judgment incorporating that sentence, concluding that it was not excessive. The trial court denied defendant's petition for post-conviction relief, which challenged the apparent inconsistency of the sentence as illegal; the Appellate Division affirmed. We granted certification, 130 *N.J.* 20, 611 *A.*2d 658 (1992), and now affirm.

I

On September 19, 1986, the Mercer County Grand Jury handed down an indictment charging defendant with aggravated sexual assault, sexual assault, and endangering the welfare of a child. Pursuant to the terms of a plea agreement, defendant entered a guilty plea to the first-degree offense of aggravated sexual assault with the understanding that the State would recommend that he receive a sentence within the range of a second-degree offense.

Prior to the occurrence of the present offense, defendant had been diagnosed as a pedophile by a psychiatrist, Dr. John J. Liccardo, M.D. He had begun seeing Dr. Liccardo for marriage counseling in February 1986, but began seeing him individually for pedophilia in May 1986. Dr. Liccardo's report indicated that he felt defendant's problem could be controlled with out-patient treatment. Defendant's evaluation by the Avenel Adult Diagnostic and Treatment Center ("Avenel"), however, concluded that defendant's assault on the victim had been compulsive and part of a deviant pattern of sexual arousal indicating a strong likelihood of the subject conduct reoccurring and further indicating that defendant is a dangerous person. The Avenel report recommended Balfour as eligible for sentencing under the New Jersey Sex Offender Act.

The trial court held a sentencing hearing, at which defendant testified that he had sought help for his pedophilia and that he believed his problem was currently under control. Dr. Liccardo testified on behalf of defendant and disputed the Avenel Center's conclusions.

At the conclusion of the testimony, the trial court sentenced defendant to the custody of the Department of Corrections for ten

years. The court imposed the sentence pursuant to the plea agreement's provision that the matter would be handled as a second-degree crime.

The court imposed a ten-year sentence, the maximum allowed for a second-degree offense, because "there are still aggravating circumstances that outweigh the mitigating circumstances and call for a maximum sentence." The court reasoned that

the nature and circumstances of the offense, particularly the depraved manner in which it was committed, the gravity and seriousness of the harm inflicted on the victim, particularly taking into account his extreme youth, there is the risk that [defendant] would commit another offense.

The only mitigating circumstance explicitly found by the court was that defendant had engaged in no prior criminal activity. The court found that a "lasting mental harm had been done to the child." The court directed defendant to the Avenel Diagnostic Center for proper treatment.

Before the Appellate Division, defendant argued that his sentence was excessive, claiming that the trial court had failed properly to consider the testimony of defendant's treating psychiatrist. The Appellate Division determined by order that defendant's sentence was not excessive. Defendant did not seek certification of his excessive-sentence appeal.

Defendant filed a petition for post-conviction relief, challenging the legality of his sentence under the "fatal inconsistency" theory articulated by the Appellate Division in *State v. Nemeth*, 214 *N.J.Super.* 324, 519 *A.*2d 367 (1986) (vacating sentence when court downgraded offense for sentencing purposes but imposed maximum sentence in range for lower-degree offense). At a post-conviction relief hearing, the court determined that defendant had not lost the benefit of the bargain because he had received a ten-year sentence when he initially had faced up to a twenty-year term for a first-degree offense. Referring to the plea agreement, the court noted that the trial court had "probably accepted it because the parties had entered into it," and that the court would have to find that the sentence was arbitrary in order to overrule it. The court also determined that the sentencing court had properly

weighed the aggravating and mitigating factors. It concluded that the sentence was legal and not excessive, and, further, that there was "absolutely no fatal inconsistency."

The Appellate Division affirmed the denial of defendant's petition for post-conviction relief, holding that the sentence was not illegal, because both the determination to sentence defendant as a second-degree offender and the determination to sentence defendant to greater than the presumptive term were within the sentencing court's discretion.

## II

■ Under the Code of Criminal Justice, a sentencing court normally will impose the presumptive sentence set forth in *N.J.S.A.* 2C:44–1(f). For a first-degree crime other than aggravated manslaughter or kidnapping, the presumptive term is fifteen years; the presumptive term for a second-degree crime is seven years. *N.J.S.A.* 2C:44–1(f)(1)(a, b, c). If, however, the sentencing court finds a "preponderance of aggravating or mitigating factors" (factors that are set forth in *N.J.S.A.* 2C:44–1(a) and (b)), the sentencing court may impose a higher or lower term within the sentencing range permissible for that degree offense. *N.J.S.A.* 2C:44–1(f). The permissible range for a first-degree crime is ten to twenty years; the permissible range for a second-degree crime is five to ten years. *N.J.S.A.* 2C:43–6(a)(1) and (2).

■ The Code also contains several exceptions that allow a sentencing court to deviate from standard sentencing procedures. *N.J.S.A.* 2C:44–1(f)(2) sets forth the standard for "downgrading an offense," and provides that

[i]n cases of convictions for crimes of the first or second-degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted.

When a sentence is "downgraded" in that manner, the defendant typically may be sentenced "within the range" applicable to the

lower degree crime. *See State v. Gerstofer,* 191 *N.J.Super.* 542, 546, 468 *A.*2d 436 (App.Div.1983) (noting that defendant could be sentenced to between three and five years for third-degree crime when downgraded from second to third-degree for sentencing purposes), *certif. denied,* 96 *N.J.* 310, 475 *A.*2d 599 (1984).

The decision to downgrade a crime is a sentencing alternative that may be exercised when a court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors. *State v. O'Connor,* 105 *N.J.* 399, 407, 522 *A.*2d 423 (1987). In contrast, a sentencing court may increase or decrease the sentence within the presumptive range set forth in *N.J.S.A.* 2C:43–6a if it concludes that the preponderance of aggravating or mitigating factors weigh in favor of a sentence higher or lower than the presumptive term. *N.J.S.A.* 2C:44–1(f)(1); *O'Connor, supra,* 105 *N.J.* at 407, 522 *A.*2d 423. The Code sets forth one set of aggravating and mitigating circumstances in *N.J.S.A.* 2C:44–1 and does not distinguish factors for different degrees of crime.

In *Nemeth, supra,* 214 *N.J.Super.* 324, 519 *A.*2d 367, the Appellate Division addressed the question of whether a "downgraded" sentence may include the maximum term allowable for the lower-degree offense. In *Nemeth,* the defendant pled guilty to second-degree aggravated assault and fourth-degree death by auto. The plea bargain provided that defendant would be sentenced as a third-degree offender. The sentencing court had downgraded the aggravated-assault offense to a third-degree offense for sentencing purposes but then had imposed the maximum sentence available for a third-degree offense, a five-year custodial term, as well as a two and a half-year period of parole ineligibility. *Id.* at 326, 519 *A.*2d 367. Although the court had approved the downgrade, it had not specifically evaluated whether the mitigating factors substantially outweighed the aggravating factors. On appeal, the Appellate Division concluded that "the preponderance of [t]he aggravating factors should have precluded the downgrade." *Id.* at 327, 519 *A.*2d 367. The court concluded that the

sentence was "fatally inconsistent" and that "there can be no plea bargain to an illegal sentence." *Id.* at 327, 519 *A.*2d 367.

In analogous contexts, however, this Court has allowed seemingly incongruous results in the imposition of a sentence. In *State v. Kruse,* 105 *N.J.* 354, 521 *A.*2d 836 (1987), we concluded that for a sentencing court to impose a period of parole ineligibility in conjunction with a presumptive term was not inconsistent. Even though the imposition of a period of parole ineligibility normally requires the conclusion that the aggravating factors outweigh the mitigating factors, and the determination to impose a presumptive sentence normally implies that the aggravating and mitigating factors are in equipoise, we concluded that in rare cases such a sentence might be appropriate as long as the court states the reasons for its determinations. *Id.* at 361–62, 521 *A.*2d 836. The Court noted that "the length of the sentence and the period of parole ineligibility are separate facets of the sentencing decision, and each independently reflects the exercise of judicial discretion." *Id.* at 362, 521 *A.*2d 836.

In *State v. Towey,* 114 *N.J.* 69, 84, 552 *A.*2d 994 (1989), we concluded that a sentencing court did not sufficiently explain the apparent inconsistency between a base term at the bottom of the range for aggravated manslaughter, and the maximum Graves Act sentence for parole ineligibility that could be imposed on the base term. We noted there that we would ordinarily anticipate in Graves Act cases that the most severe parole ineligibility term would be imposed in conjunction with base terms that exceed the presumptive term. (The Graves Act, *N.J.S.A.* 2C:43–6c, mandates the imposition of a minimum term of imprisonment for crimes in which a firearm was used or possessed.) We remanded in *Towey* because it was not clear from the sentencing court's opinion why the sentence contained the apparent inconsistency. We made clear, however, that the inconsistency itself was not improper as long as it could be justified. *Ibid.*

Recently, in *State v. Kelly,* 266 *N.J.Super.* 392, 629 *A.*2d 1355 (1993), the Appellate Division has applied *Kruse* to uphold a

sentence that contains the same apparent inconsistency as the sentence before us. Pursuant to a plea agreement, the sentencing court imposed a ten-year prison term for first-degree robbery. The agreement required the State to recommend that the court impose a prison term appropriate to a second-degree crime. The Appellate Division acknowledged the logical inconsistency in the sentence, noting that the "trial judge did not arrive at the sentence pursuant to the literal guidelines of the Criminal Code because he reached inconsistent conclusions on the two occasions that he had to weigh aggravating and mitigating sentencing factors." *Id.* at 396, 629 *A.*2d 1355. Nonetheless, the Appellate Division upheld the sentence, concluding that *Kruse* supports the proposition that "despite having necessarily reached inconsistent predicate results when weighing aggravating and mitigating factors, a judge may impose a maximum base sentence when imposing a sentence appropriate to a crime one degree lower than the crime of which a defendant is convicted." *Id.* at 398, 629 *A.*2d 1355.

■ We agree that the apparent inconsistency of a sentence like the one before us is supported by the holding in *Kruse.* However, the decision to "downgrade" defendant's sentence to a second-degree sentence and the decision to impose the maximum sentence within the second-degree range are distinct decisions, each of which "independently reflects the exercise of judicial discretion." *Kruse, supra,* 105 *N.J.* at 362, 521 *A.*2d 836. The context of each discrete decision in a case such as this can explain and dissipate the apparent contradiction when those decisions are juxtaposed.

■ The court made the decision to "downgrade" defendant's sentence to the lower range assigned to second-degree sentences in the context of a plea agreement. The plea agreement can appropriately be considered and weighed in the decision to downgrade. Traditionally a guilty plea is a material factor bearing on the ultimate sentence. *State v. Thomas,* 61 *N.J.* 314, 321, 294 *A.*2d 57 (1972); *State v. Taylor,* 49 *N.J.* 440, 455, 231 *A.*2d 212 (1967). Thus, a guilty plea can have a lenient influence on the

trial court's sentencing disposition, partly because it reflects a defendant's acceptance of responsibility for his or her criminal conduct and partly because it assists in the efficient disposition of cases. *See State v. Barboza*, 115 *N.J.* 415, 420, 558 *A.*2d 1303 (1989).

In the present case, the guilty plea was part of an agreement that the State would recommend a downgrade of defendant's sentence to the range imposed on second-degree offenses. Thus, the agreement itself in some measure defines the mitigating effect of the plea on the court's discretionary decision whether to downgrade the sentence.

All of the reasons that impel the decision to downgrade, however, need not be carried forward with full force into the succeeding sentencing determination. *See Kruse, supra*, 105 *N.J.* at 361–62, 521 *A.*2d 836 (finding that when parties have entered plea agreement limiting maximum sentence to presumptive term, court may impose period of parole ineligibility despite fact that imposition of period of parole ineligibility normally requires conclusion that aggravating factors outweigh mitigating factors, and determination to impose presumptive sentence normally involves equipoise of factors). If the plea agreement is used and weighed as a material factor in the decision on the downgrade of defendant's sentencing exposure, the trial court need not re-use the guilty plea or give it the same weight when making the independent decision to affix a defendant's sentence within the permissible range for second-degree crimes. The "interest of justice" that supported the downgrade of the sentence in accordance with the plea agreement does not require giving the plea agreement continued weight in addition to its initial impact on the decision to downgrade. Thus, a trial court could, in considering the appropriate term for the downgraded offense, weigh only the enumerated statutory aggravating and mitigating factors. It thus could determine that a preponderance of aggravating factors justifies a term greater than the presumptive term even though for purposes of the downgrade it was clearly convinced in the interest of justice

that the mitigating factors, with the added weight of the plea agreement, outweighed those aggravating factors.

■ We are thus satisfied that the statute contemplates the kind of sentence that was imposed here. Further, the record does not suggest that the trial court's decision to downgrade defendant's sentence in accordance with the plea agreement was an abuse of its discretion. See *State v. Jarbath,* 114 *N.J.* 394, 401, 555 *A.*2d 559 (1989) ("The critical focus of the appellate power to review and correct sentences is on whether the basic sentencing determination of the lower court was 'clearly mistaken.' "). Defendant's first-offender status combined with the recommendation of the plea agreement gave the trial court a reasonable basis to support its determination that it was "clearly convinced that the mitigating factors substantially outweigh the aggravating factors" and that "the interest of justice demands" a decision to downgrade. *N.J.S.A.* 2C:44–1(f)(2). It was certainly within the trial court's discretion under the circumstances to conclude that the plea agreement's recommendation promoted the "interest of justice." We have previously noted that "[p]lea bargaining has become institutionalized as a legitimate, respectable, and practical tool in the efficient and fair administration of justice." *Barboza, supra,* 115 *N.J.* at 420, 558 *A.*2d 1303.

■ The record also supports the decision to sentence defendant to the maximum of the range for the second-degree offense. The trial court was justified in finding, with less weight put on the guilty plea for this determination, that a preponderance of aggravating factors existed, (the depraved manner in which the offense had been committed, the gravity and seriousness of the harm inflicted on the victim, particularly taking into account the extreme youth of the victim, and the risk that defendant would commit another offense) supporting an imposition of a longer sentence.

■ Essential to the validity of the sentence in this case is the extent to which the decision to downgrade is a discrete discretion-

ary decision distinct from the discretionary decision to impose a ten-year sentence. The fact that usually the same set of statutory factors informs each decision suggests that the sentencing court will rarely downgrade a defendant's sentence, yet impose the maximum sentence within the presumptive range of the down-graded offense. *See Kruse, supra,* 105 *N.J.* at 362, 521 *A.2d* 836. Nevertheless, as in *Kruse,* the presence of a guilty plea and a plea agreement can be an important factor to be weighed in the sentencing decisions. Although we expect this sentencing configuration to be unusual, when properly justified by the circumstances, such an outcome does not demonstrate a trial court's abuse of its sentencing discretion.

## III

We note also that defendant raises an in ineffective assistance of counsel claim based on his appellate counsel's failure to raise the apparent inconsistency of his sentence as an issue on appeal. Our resolution of defendant's challenge to his sentence obviates any need to consider this claim.

## IV

The judgment is affirmed.

For Affirmance—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.