**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1882-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WILLIAM TORRES a/k/a
WILLIAM TORRES JR.,

     Defendant-Appellant.

_____

Submitted December 16, 2019 – Decided January 21, 2020

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment Nos. 16-03-0321, 17-01-0025, and 17-02-0098.

Joseph E. Krakora, Public Defender, attorney for appellant (Louis H. Miron, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Alanna M. Jereb, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant was tried before a jury and found guilty of third-degree aggravated assault, contrary to N.J.S.A. 2C:12-1(b)(7). He appeals from the judgment of conviction (JOC) and sentence, and raises the following issues:

POINT I

> THE TRIAL COURT ERRED IN CHARGING THE JURY CONCERNING ACCOMPLICE LIABILITY WHERE THE CO-DEFENDANTS DID NOT TESTIFY AT TRIAL, DID NOT HAVE ANY LEGAL OR OTHER CONNECTION WITH DEFENDANT, AND HAD EACH ENTERED PLEAS TO SIMPLE ASSAULT.

POINT II

> THE TRIAL COURT ERRED IN FAILING TO CHARGE SELF-DEFENSE WHEN THE DEFENSE WAS WARRANTED AND SUPPORTED BY THE FACTS.

POINT III

> THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING DEFENDANT TO A MANIFESTLY EXCESSIVE AND UNJUST SENTENCE BASED UPON THE RECORD AND, THEREFORE, DEFENDANT'S SENTENCE SHOULD BE VACATED.

After considering these arguments against the record and applicable legal principles, we affirm both defendant's conviction and sentence.

2

## I.

The trial record reveals the following relevant facts. In November 2016, at approximately 6:40 p.m., an unidentified man approached Antonio Portillo and asked him for $2. After Portillo gave him the money, Portillo kept walking and was then approached by a second man, the defendant, who asked him for a cigarette. Portillo had seen defendant "hanging out on [the street] on many occasions," and told him "that if he wanted, he could go out and get a job." Defendant responded by calling Portillo a "motherfucker," and Portillo replied with similar vituperative epithets. Portillo and defendant continued to argue, and Portillo "thr[ew] [a] punch" at defendant which did not strike him. Portillo testified that at the time of the altercation he was drunk.

Portillo then walked away from defendant towards his home. At some point later, and after the initial interaction between defendant and Portillo was over, defendant and two other men approached Portillo. Portillo testified that three or four people attacked him and that one of the men hit him near his ear, causing him to fall to the ground. While on the ground, defendant kicked him in the face. Portillo was unsure how many times he was hit thereafter as he testified that he fainted.

3

A-1882-17T3

At approximately 7:00 p.m., the police initially received a report regarding a sexual assault on Bergenline Avenue. Officer Lazarel Alvarez arrived at the scene and was approached by Alberto Jimenez who advised that he was "the one that called the police . . . about the man who had been beat up." Jimenez informed Officer Alvarez that the incident involved approximately five to seven men, that he witnessed one of the men strike defendant who then "went down," and pointed him to where Portillo was "slouched in a kneeling position."

Officer Alvarez observed that Portillo had "one eye semi-closed," "injuries to his hands," and "blood in his mouth, his hands, [and] his clothing." Additionally, Portillo had "multiple lacerations to the . . . face . . . [and] lower lip." Portillo was "semi-conscious" and unable to speak coherently.

An emergency medical technician (EMT) arrived to assist Portillo and smelled an odor of alcohol on Portillo as he attended to his injuries. Portillo attempted to "flee," but was advised that he needed medical treatment because he had been drinking and because of the "significant trauma" to his face.

Detective Michael Musa also responded to the scene and secured a surveillance tape from a nearby restaurant that depicted portions of the initial interaction between Portillo and defendant. After the EMTs transported Portillo to the hospital, an individual approached Detective Musa and informed him that

one of the "guys involved [was] a few blocks south with two females" and wearing black. Detective Musa then stopped a man, Raymond Nieves, who was with two women. Nieves was later arrested and charged along with defendant and two other individuals with the assault.

As a result of the incident, Portillo suffered bilateral, lower jaw mandible fractures. Three days after he was admitted to the hospital, Portillo underwent surgery and his jaw was wired shut. At trial, almost a year later, Portillo testified that he still felt pain and was unable to eat anything hard.

The court sentenced defendant with respect to the aggravated assault conviction as well as two prior guilty pleas stemming from separate indictments that charged defendant with possession and distribution of controlled dangerous substances (CDS). With respect to the aggravated assault conviction, the court "expressly reject[ed]" defendant's request to apply mitigating factors three and four. The court explained that "[t]here was nothing that . . . amounted to strong provocation," and, given defendant's drug history, "[t]here [was] nothing . . . that would tend to excuse or justify his conduct for which he was convicted." The court applied aggravating factors two, three, six, and nine, and sentenced defendant to a five-year-term of imprisonment to run consecutive to his sentence on the CDS charges.

II.

In defendant's first point, he asserts that the court improperly charged the jury on accomplice liability, claiming there was a dearth of evidence supporting the charge. Further, defendant contends that "this error was compounded by the trial court's den[ial] [of] [defendant's] application to take judicial notice of the co-defendants' pleas to simple assault . . . ." Defendant adds that "none of the co-defendants [were] identified as having been involved with, or legally connected to, [defendant]." According to defendant, the "effect of the instructions . . . was to obfuscate the possibility that the co-defendants were the ones who purposely committed the assault, and that [defendant], although at the scene . . . did not intend the victim to suffer serious bodily harm." We disagree.

"Appropriate and proper charges to a jury are essential for a fair trial." State v. Jordan, 147 N.J. 409, 421 (1997) (quoting State v. Green, 86 N.J. 281, 287 (1981)). Because an individual's liberty is at stake, "[e]rroneous instructions on matters or issues that are material to the jury's deliberations are presumed to be reversible error in criminal prosecutions." Id. at 422 (citing State v. Warren, 104 N.J. 571, 579 (1986)). "In determining whether a charge was erroneous, the charge must be read as a whole." Ibid. (citing State v. Wilbely, 63 N.J. 420, 422 (1973)). Essentially, if the charge adequately covers

the matter requested, there is no error.  State v. Thompson, 59 N.J. 396, 411 (1971).  Therefore, "[t]here is no reversible error where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury."  State v. Gaikwad, 349 N.J. Super. 62, 75 (App. Div. 2002) (internal quotation marks omitted).

N.J.S.A. 2C:2-6(c) provides in relevant part that an individual is an accomplice of another if "[w]ith the purpose of promoting or facilitating the commission of the offense[,] he . . . [s]olicits such other person to commit it, [or] [a]ids or agrees or attempts to aid such other person in planning or committing it."  For accomplice liability to attach, the jury "must find that [the defendant] 'shared in the intent which is the crime's basic element, and at least indirectly participated in the commission of the criminal act.'"  State v. Bielkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993) (quoting State v. Fair, 45 N.J. 77, 95 (1965)); see also State v. Whitaker, 200 N.J. 444, 458 (2009) ("An accomplice is only guilty of the same crime committed by the principal if he shares the same criminal state of mind as the principal.").  Additionally, "where the evidence indicates a rational basis for accomplice liability, [a] judge can charge the jury on that basis even though the indictment does not expressly

A-1882-17T3

allege a violation of N.J.S.A. 2C:2-6." State v. Hakim, 205 N.J. Super. 385, 388 (App. Div. 1985).

Here, it is not disputed that the court's charge mirrored the post-Bielkiewicz Model Jury Charge, see Model Jury Charge (Criminal), "Liability for Another's Conduct/Complicity," (2018). State v. Whitaker, 402 N.J. Super. 495, 513-14 (App. Div. 2008) (quoting State v. Angoy, 329 N.J. Super. 79, 84 (App. Div. 2000)) ("When a jury instruction follows the model jury charge, although not determinative, 'it is a persuasive argument in favor of the charge as delivered.'"). And, there was ample evidence elicited at trial to support the accomplice liability charge. For example, Portillo stated at trial, which was in part corroborated by Jimenez's testimony and the surveillance tape, that after the initial argument with defendant, he was approached by a group of men, including defendant. Portillo stated that one of the men, who he was unable to identify, struck him in the ear. He explicitly stated that defendant then kicked him in the face and was uncertain how many times he was hit afterwards.

At a minimum, this testimony supports not only the jury's verdict that defendant committed an aggravated assault, but also that he had a "shared intent" with the co-defendants to purposely commit, and participate in the commission of, the aggravated assault. The evidence presented at trial therefore provided a

A-1882-17T3

rational basis for accomplice liability and we discern no error in the court's charge on the issue as it "adequately convey[ed] the law and [was] unlikely to confuse or mislead the jury." Gaikwad, 349 N.J. Super. at 75.

Finally, we deem defendant's argument that the court erred in failing to advise the jury, or take judicial notice, of the fact that Nieves and the other co-defendants pled guilty to simple assault without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). The fact that co-defendants pled guilty to simple assault has no bearing on the appropriateness of the court's accomplice liability jury charge, as there was a rational basis to support the instruction.

### III.

Defendant next asserts that the court erred in denying his request for a self-defense jury charge, "as it was a theory of defendant's defense throughout the trial." Again, we disagree.

Pursuant to N.J.S.A. 2C:3-4(a), "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person . . . ." "The defendant must harbor an actual reasonable belief that his use of force is necessary to prevent the imminent

9

application of unlawful force by the assailant." State v. Villanueva, 373 N.J. Super. 588, 597 n.1 (2004) (citing State v. Kelly, 97 N.J. 178, 199 (1984)).

"In considering whether to charge the jury on self-defense, a court should consider the circumstances that might give rise to that defense, including the defendant's and alleged aggressor's conduct . . . ." State v. Rodriguez, 195 N.J. 165, 174 (2008). "[I]f there exists evidence in either the State's or the defendant's case sufficient to provide a 'rational basis' for [its] applicability," "the trial court must charge the jury on self-defense." State v. Bryant, 288 N.J. Super. 27, 35 (App. Div. 1996).

In this case, the evidence demonstrates that the parties engaged in a verbal dispute that culminated with Portillo unsuccessfully attempting to strike defendant. Significantly, the initial altercation ended, and Portillo walked away from defendant. At that point, any threat of unlawful force by Portillo ceased. The trial proofs further established that defendant later approached Portillo with a group of men and struck him without warning or provocation. On these facts, the trial evidence did not support a self-defense charge as defendant did not have a reasonable belief that use of force was necessary to prevent the imminent application of unlawful force by Portillo. The court properly denied defendant's request for a self-defense charge.

A-1882-17T3

IV.

Finally, defendant asserts that the court abused its discretion by ordering his sentence on his aggravated assault conviction to run consecutive to his sentences on the unrelated CDS convictions, resulting in an aggregate sentence of ten years of incarceration with three years of parole ineligibility. He further argues that the court failed to consider mitigating factors three, four and five. We reject defendant's arguments as we are satisfied that the court properly considered the aggravating and mitigating factors and sentenced defendant to a five-year consecutive term, which was within the appropriate sentencing range. See N.J.S.A. 2C:43-6(a)(3).

"Appellate review of sentencing is deferential, and appellate courts are cautioned not to substitute their judgment for those of our sentencing courts." State v. Case, 220 N.J. 49, 65 (2014). An appellate court must affirm a sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [this] case makes the sentence clearly unreasonable so as to shock the judicial conscience." State v. Fuentes, 217 N.J. 57, 70 (2014) (citation omitted).

11

Further, we are "'bound to affirm a sentence, even if [the reviewing court] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record.'" State v. Grate, 220 N.J. 317, 337 (2015) (citation omitted). To be accorded such deference, the sentencing court is required to "identify the relevant aggravating and mitigating factors, determine which factors are supported by a preponderance of evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citation omitted); State v. M.A., 402 N.J. Super. 353, 370 (App. Div. 2008); N.J.S.A. 2C:43-2(e); R. 3:21-4(g).

Although the judge has discretion as to the weight to be given to each factor, the judge lacks discretion to decline to "take into account a mitigating factor that is fully supported by the evidence," but "must [include such factor as] part of the deliberative process." State v. Dalziel, 182 N.J. 494, 505 (2005). In addressing the aggravating and mitigating factors, the court must engage in a qualitative weighing process, evaluating each of the aggravating and mitigating factors and explaining that evaluation on the record in sufficient detail to permit appellate review. State v. Towey, 114 N.J. 69, 84 (1989); State v. Roth, 95 N.J. 334, 368 (1984). A court, however, need not "explicitly reject each and every

12

mitigating factor argued by a defendant." State v. Bieniek, 200 N.J. 601, 609 (2010). Rather, "[i]t is sufficient that the trial court provides reasons for imposing its sentence that reveal the court's consideration of all applicable mitigating factors in reaching its sentencing decision." Ibid.

The court explained that it found aggravating factors two ("[t]he gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance . . . "), three ("[t]he risk that the defendant will commit another offense"), six ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted"), and nine ("[t]he need for deterring the defendant and others from violating the law"). N.J.S.A. 2C:44-1.

Additionally, contrary to defendant's assertion, the court considered and rejected the applicability of mitigating factors three, four and five. As noted, in considering mitigating factor three ("[t]he defendant acted under a strong provocation"), the sentencing judge stated, "I saw the videotape [and] . . . [t]here was nothing that . . . amounted to strong provocation." With respect to mitigating factor four ("[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"), the judge

found "[t]here is nothing that I saw, even given defendant's drug abuse history, that would tend to excuse or justify his conduct for which he was convicted."

As to mitigating factor five ("[t]he victim of the defendant's conduct induced or facilitated its commission"), defendant relies on State v. Robinson, 266 N.J. Super. 268, 283 (App. Div. 1993), rev'd on other grounds, 136 N.J. 476 (1994), and claims "the fact that the trial court denied [defendant's] self-defense argument and concluded that Portillo's own conduct did not excuse [defendant's] actions should not render factor [five] inapplicable." Defendant further asserts that in State v. Robinson, the court concluded that factor [five] applied, "where the defendant engaged in a far more serios encounter with the victim." First, we note that contrary to defendant's claims, the court in State v. Robinson did not address or conclude that mitigating factor five applied in that case. Second, and more importantly, we are satisfied from our review of the record, and the JOC, that the court considered all of the aggravating and mitigating factors. We glean from that record that although the court did not specifically cite to mitigating factor five, the sentencing judge clearly considered its applicability as he dismissed defendant's reliance on State v. Robinson, but nevertheless concluded that nothing in the record would support the conclusion that the

victim provoked defendant and "[t]here [was] nothing . . . that would tend to excuse or justify his conduct for which he was convicted."

Finally, defendant's contention that his sentence was excessive because it ran consecutive to his sentences for his CDS convictions is without merit. In imposing a consecutive sentence, courts should consider "facts relating to the crimes," including whether "the crimes and their objectives were predominantly independent of each other," or whether "the crimes were committed at different times or separate places." State v. Yarbough, 100 N.J. 627, 644 (1985); see also State v. Soto, 385 N.J. Super. 247, 257 (App. Div. 2006) (affirming the court's imposition of a consecutive sentence where there were "separate crimes committed on separate occasions"). Here, the underlying CDS convictions were materially different factually and legally than defendant's aggravated assault conviction. The crimes were independent, with different objectives, and took place at different times and locations. The court did not abuse its discretion in imposing a consecutive sentence and the court's overall sentence does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1882-17T3