NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0369-15T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

DAVID W. CAMPBELL, a/k/a
DAVID WILLIAM CAMPBELL,

 Defendant-Appellant.
________________________________

 Submitted May 30, 2017 – Decided June 28, 2017

 Before Judges Sabatino and Nugent.

 On appeal from Superior Court of New Jersey,
 Law Division, Warren County, Indictment No.
 11-06-00185.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Anderson D. Harkov, Designated
 Counsel, on the brief).

 Richard T. Burke, Warren County Prosecutor,
 attorney for respondent (Kelly Anne Shelton,
 Assistant Prosecutor, on the brief).

PER CURIAM

 Following a judge's denial of defendant David W. Campbell's

motion to suppress evidence of a controlled dangerous substance

(CDS), lysergic acid diethylamide (LSD), defendant accepted a plea
offer and pleaded guilty before a different judge to one count of

second-degree possession with intent to distribute LSD. At

sentencing, the second judge rejected the plea bargain and

sentenced defendant on the second-degree offense to a flat five-

year custodial term. Defendant has appealed. He argues two

points:

 POINT ONE

 THE TRIAL COURT ERRED WHEN IT DENIED
 DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED
 WHEN NEW JERSEY STATE TROOPERS REENTERED
 DEFENDANT'S AUTOMOBILE TO CONDUCT A SECOND
 SEARCH THAT WAS NOT A CONTINUATION OF THE
 ORIGINAL SEARCH, CONTRARY TO THE UNITED STATES
 AND NEW JERSEY CONSTITUTIONS.

 POINT TWO

 DEFENDANT'S SENTENCE WAS EXCESSIVE AND
 CONSTITUTED AN ABUSE OF DISCRETION, REQUIRING
 HIS SENTENCE TO BE VACATED AND THE CASE
 RETURNED TO THE TRIAL COURT FOR A NEW SENTENCE
 HEARING.

 Because New Jersey State Troopers re-entered defendant's

automobile while reasonably continuing their execution of a valid

search warrant, we reject defendant's first argument and affirm

his conviction. We are constrained, however, to vacate defendant's

sentence and remand for re-sentencing. The sentencing judge did

not appear to consider all relevant factors when it rejected a

material term of the plea agreement, and did not afford defendant

the opportunity to withdraw his plea.

 2 A-0369-15T3
 In June 2011, a Warren County grand jury returned an

indictment charging defendant with four crimes: first-degree

possession with intent to distribute a CDS, LSD, N.J.S.A. 2C:35-

5(a) and N.J.S.A. 2C:35-5(b)(6) (count one); third-degree

possession of a CDS, LSD, N.J.S.A. 2C:35-10(a)(1) (count two);

third-degree possession with intent to distribute a CDS, hashish,

N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (count three);

and fourth-degree possession of a CDS, hashish, N.J.S.A. 2C:35-

10(a)(3) (count four). Following his indictment, defendant filed

motions to dismiss the indictment and suppress LSD police seized

from the automobile he had been driving. The judge who conducted

the pre-trial proceedings ultimately denied the motions.

 Thereafter, defendant struck a plea bargain with the State

in which he agreed to plead guilty to count one of the indictment,

possession with intent to distribute a CDS, LSD, as amended to a

second-degree crime. In exchange, the State agreed to dismiss the

indictment's remaining counts and consented to the court

sentencing defendant as a third-degree offender. During the plea

proceeding, the judge assured himself defendant understood the

sentence would be in the third-degree range of three to five years,

stating that due to the presumption of imprisonment for second-

degree crimes, defendant was "almost certain to go to prison for

a term of something between three and five years."

 3 A-0369-15T3
 At sentencing, the judge rejected the plea bargain and

sentenced defendant to a flat five-year custodial term for the

second-degree crime. Defendant received 207 days of jail credit,

and the judge recommended defendant be considered for entry into

the Intensive Supervision Program "at his earliest eligibility."

The judge also imposed appropriate fines and assessments.

Following sentencing, defendant filed this appeal.

 Defendant first challenges the denial of his motion to

suppress LSD police seized after impounding the car defendant had

been driving before his arrest. The record of the suppression

hearing reveals the following facts.

 The relevant events occurred on June 28, 2010. That morning,

at approximately 4:00 a.m., State Troopers Antonio Sousa and Joseph

Palach drove their marked patrol car to the Allamuchy truck stop

on Route 80 to conduct a routine property check. There, they saw

a parked Honda Civic with its windows down. Trooper Sousa exited

the police car and approached the Honda. When he came within

three feet of the car, he smelled raw marijuana. He walked closer

to the Honda's passenger side, shone his flashlight into the car,

and saw two males asleep. He also saw a green plastic jar

containing green vegetation on the passenger side armrest. Based

on his training and experience, Trooper Sousa suspected the

vegetation was marijuana.

 4 A-0369-15T3
 Trooper Sousa waved to Trooper Palach, who walked to the

Honda's driver's side. Trooper Palach also detected the odor of

raw marijuana. Trooper Sousa again shone his flashlight into the

car, "banged on the car, [and] stated New Jersey State Police[.]"

The men woke up. Trooper Palach told them he smelled marijuana

and Trooper Sousa observed marijuana in the car.

 Trooper Palach asked the driver, defendant, for his license

and registration, which defendant produced. Trooper Sousa asked

the passenger for his license. As the passenger reached for his

license, the trooper "observed a clear glass jar on the passenger

side floorboard with green vegetation in it." Trooper Palach

seized the jar, asked defendant to exit the vehicle, handcuffed

him, and placed him under arrest. While searching defendant

incident to the arrest, the trooper seized hashish from defendant's

person.

 Trooper Sousa simultaneously asked the passenger to turn over

the green plastic jar, instructed him to exit the vehicle, placed

him under arrest, and handcuffed him. The trooper searched the

passenger but found nothing.

 Defendant refused to consent to a search of the car. After

arranging for a tow truck to tow the Honda to the police station,

the troopers drove defendant and his passenger there.

 5 A-0369-15T3
 After arriving at the station, Trooper Sousa prepared an

affidavit and application for a search warrant, which a judge

issued at approximately 12:10 p.m. the same day. The warrant

required the troopers to execute a search "between the hours of

6:00 a.m. to 2:00 a.m. within ten (10) days from the issuance

hereof and thereafter to forthwith make prompt return to [the

judge] with a written inventory of the property seized within 10

days of the issuance of [the] warrant." The warrant authorized

the officers to search the Honda for "illegal controlled dangerous

substances, and/or evidence of the possession thereof, including

but not limited to marijuana and hashish[.]"

 After receiving the warrant, Trooper Palach, Trooper Sousa,

and two other troopers searched the Honda. Police initially

searched the Honda for about an hour, beginning shortly after 1:00

p.m. and finishing shortly before 2:00 p.m. The troopers seized

money, CDS paraphernalia, two clear plastic bags containing

marijuana, and hashish. They also seized multiple "papers that

resembled small little perforated sheets." Each sheet contained

numerous multicolored "tabs." The sheets were "relatively square"

and contained thirty rows and thirty columns of tabs, for a total

of 900 tabs per sheet.

 Although Trooper Sousa had seen a "lens bottle" when he

initially searched the Honda, and though other troopers thought

 6 A-0369-15T3
it "was out of the ordinary" for two males to have liquid nail

polish remover, which the troopers had seen in the car, the

troopers did not immediately understand the significance of these

items. Trooper Susan Stafford, an experienced narcotics

investigator who arrived later, understood their significance.1

 Within "a couple of hours" of the troopers sorting and laying

out the seized evidence in a room, Trooper Stafford arrived. She

discussed with the other troopers how LSD is dabbed on the "tabs"

on the perforated sheets as a means of distributing it for

ingestion. Trooper Stafford recommended a further search of the

Honda. During the ensuing search, the troopers located and seized

a small glass nail polish container and a "lens relief plastic

bottle," the latter of which contained LSD.

 Trooper Sousa executed a "Return of Search Warrant" two days

after the search, but the attached inventory sheet did not include

the lens bottle. Trooper Stafford submitted an amended inventory

sheet on August 18, 2010, identifying the lens container.

 The judge who heard the suppression motion ultimately denied

it. Defendant contests neither the warrantless searches at the

truck stop nor the initial search of the Honda pursuant to the

1
 Trooper Stafford's last name changed to Mistretta between the
day of defendant's arrest and the time of the suppression hearing.

 7 A-0369-15T3
warrant. He contests only the search that occurred when troopers

re-entered the Honda after Trooper Stafford arrived at the station.

 In a written decision, the motion judge found the re-entry

and search lawful. The judge noted the troopers were searching

for CDS, which the warrant authorized. The warrant did not

restrict the search to certain types of CDS. Thus, the second

time troopers entered the Honda, their purpose was the same as

that for the initial entry, namely, to search for CDS.

 The judge next noted the reason the troopers re-entered the

Honda was because a trooper who did not participate in the initial

search recognized the perforated paper as a medium for distributing

LSD. The judge found it reasonable "for law enforcement officers

to return to look for the missing components to this compound

product. If they found a box of ammunition they would be expected

to look for the gun; if they found a stolen jewelry box, they

would be expected to look for jewelry." The judge concluded,

"[t]he fact that the [t]roopers conducting the first part of the

search did not recognize what they had in the perforated paper is

no basis to find their return unreasonable." The judge held the

re-entry of the car was "a reasonable continuation of the search

. . . authorized by the search warrant." For those reasons, she

denied defendant's suppression motion.

 8 A-0369-15T3
 On appeal, defendant first contends the trial court erred

when it denied his motion to suppress the evidence seized by the

troopers when they re-entered the Honda and found LSD. Defendant

argues the warrant did not authorize an additional search after

the troopers completed their original search. The argument is

unpersuasive. We affirm, substantially for the sound reasons

expressed by the motion judge in her written opinion.

 Our review of a trial court's factual findings is deferential.

State v. Scriven, 226 N.J. 20, 32 (2016). That is particularly

so as "to those findings of the trial judge which are substantially

influenced by his [or her] opportunity to hear and see the

witnesses and to have the 'feel' of the case, which a reviewing

court cannot enjoy." State v. Johnson, 42 N.J. 146, 161 (1964).

If the trial court's findings could reasonably have been reached

on sufficient, credible evidence present in the record, our task

is complete and we should not disturb the result. Id. at 162.

Our review of the trial court's legal conclusions is plenary.

State v. Rockford, 213 N.J. 424, 440 (2013) (citations omitted).

 Under the "reasonable continuation doctrine," law enforcement

officers executing a search warrant may, in limited circumstances,

re-enter the location to continue their initial search. State v.

Finesmith, 406 N.J. Super. 510, 519 (App. Div. 2009). Their re-

entry must, however, be a continuation of the initial search.

 9 A-0369-15T3
 In order for a re-entry into premises to be
 considered a reasonable continuation of the
 search authorized by the warrant, two
 conditions must be satisfied: first, "the
 subsequent entry must . . . be a continuation
 of the original search, rather than a new and
 separate search," and second, "the decision
 to conduct a second entry to continue the
 search must be reasonable under the totality
 of the circumstances."

 [Id. at 19 (citing United States v.
 Keszthelyi, 308 F.3d 557, 559 (6th Cir.
 2002)).]

 Here, the motion judge properly concluded the troopers

reasonably continued their search when they returned to the Honda

after Trooper Stafford, who was not present when troopers initially

seized items from the Honda, reviewed the seized evidence and

recognized a connection between the items seized and distribution

of LSD. The search for LSD was well within the scope of the

warrant, which authorized the troopers to search the Honda for

CDS, including but not limited to marijuana and hashish. Once the

troopers recognized the connection between the perforated sheets

and the distribution of LSD, they re-entered the Honda almost

immediately. Only two hours or less elapsed between the officers

sorting the evidence they initially seized and returning to

complete the search. See Finesmith, supra, 406 N.J. Super. at

521. These circumstances amply support the motion judge's

determination that the re-entry into the Honda was both a

 10 A-0369-15T3
continuation of the initial search and reasonable under the

circumstances.

 In his second argument, defendant contends his sentence is

excessive and the sentencing judge abused his discretion by

imposing a sentence within the second-degree range, contrary to

the plea agreement. We agree a remand is necessary.

 The terms of the plea agreement included defendant being

sentenced within the third-degree range. During the plea colloquy,

the judge made certain defendant understood what pleading guilty

to a second-degree crime but being sentenced as if for a third-

degree crime meant. The judge explained the sentencing range was

"[b]etween three and five years;" and, "notwithstanding the fact

that [defense counsel] has negotiated a downward departure, so to

speak, the presumption of imprisonment still applies. So it is

almost certain you will go to state prison." As the plea

proceeding concluded, the judge warned defendant:

 I tell you that between now and the time of
 sentencing, if you get into any additional
 trouble, particularly if the trouble consists
 of conduct similar to that which brings you
 here today, things will not go well for you
 at the time of sentencing. In point of fact,
 not only will you be more likely to face five
 years as opposed to three, you may face
 objectionable sentence bar of the portion of
 this plea agreement and be back in the second-
 degree range exposing you now to up to ten
 years in state prison. Clear?

 11 A-0369-15T3
 [(Emphasis added).]

Defendant said it was clear.

 It was also clear from the court's discussion with defendant

that defendant would be sentenced to a prison term between three

and five years. During the sentencing proceeding, without any

advance warning to defendant, the judge determined not to follow

the plea bargain. Rather, he imposed a sentence for a second-

degree offense.

 The judge found two aggravating factors: the risk of re-

offense, N.J.S.A. 2C:44-1(a)(3), and the need for deterrence,

N.J.S.A. 2C:44-1(a)(9). The judge also found two mitigating

factors: defendant did not contemplate his conduct would cause

others harm, N.J.S.A. 2C:44-1(b)(2), and defendant had no prior

criminal history, N.J.S.A. 2C:44-1(b)(7). The judge found the

mitigating factors did not substantially outweigh the aggravating

factors. For that reason, and because the judge was not clearly

convinced the interests of justice would be served by sentencing

defendant as if for a third-degree crime, the judge sentenced

defendant for his second-degree offense.

 The State concedes the sentencing judge did not follow the

plea agreement. Nonetheless, the State argues that defendant's

"net exposure is the same." The State also argues the sentencing

judge was not bound by the plea agreement, the judge had discretion

 12 A-0369-15T3
to accept or reject the agreement, and the judge did not abuse his

discretion by rejecting it.

 The State's argument correctly notes a judge's authority to

set aside a plea agreement, but overlooks both a court rule and

relevant precedent. Rule 3:9-3(e) provides that if the sentencing

judge determines "the interests of justice would not be served by

effectuating the [plea] agreement . . . or by imposing sentence

in accordance with the court's previous indications of sentence,

the court may vacate the plea or the defendant shall be permitted

to withdraw the plea." [(Emphasis added).]

 Here, the sentencing judge not only rejected the plea

agreement term requiring defendant to be sentenced as if for a

third-degree crime, but he imposed a sentence contrary to his

previous indications of the likely sentence at the plea proceeding.

There, the judge had made certain defendant knew he would be

sentenced to a term between three and five years, and implied that

if defendant remained offense free before sentencing, he would

likely be sentenced closer to a three-year term than a five-year

term. When the judge later decided not to accept the plea

agreement, he should have afforded defendant a fair opportunity

to withdraw his plea. We are mindful that defendant's trial

counsel made no requests to withdraw the plea, but that does not

preclude relief on appeal. R. 2:10-2.

 13 A-0369-15T3
 Defendant next contends that in view of the plea bargain, the

sentencing judge did not have to find that mitigating factors

substantially outweighed aggravating factors in order to sentence

defendant as if for a third-degree crime. The argument is not

entirely correct. Nonetheless, the sentencing judge appeared to

have overlooked authority requiring him to take the plea bargain

into consideration.

 To be sure, a court must be "clearly convinced that the

mitigating factors substantially outweigh the aggravating factors

and . . . the interest of justice" will be served before exercising

its discretion to sentence a first- or second-degree offender "to

a term appropriate to a crime of one degree lower[.]" N.J.S.A.

2C:44-1(f)(2); see also State v. Megargel, 143 N.J. 484, 496

(1996). If a judge is not so convinced, the judge need not

sentence a defendant to a lower term merely because the parties'

plea bargain requires a contrary result. State v. Moore, 377 N.J.

Super. 445, 451 (App. Div.), certif. denied, 185 N.J. 267 (2005).

But the plea bargain is not irrelevant. In State v. Balfour, 135

N.J. 30, 38-39 (1994), our Supreme Court explained:

 The court made the decision to
 "downgrade" defendant's sentence to the lower
 range assigned to second-degree sentences in
 the context of a plea agreement. The plea
 agreement can appropriately be considered and
 weighed in the decision to downgrade.
 Traditionally a guilty plea is a material

 14 A-0369-15T3
 factor bearing on the ultimate sentence.
 [State v. Thomas, 61 N.J. 314, 321 (1972);
 State v. Taylor, 49 N.J. 440, 455 (1967).]
 Thus, a guilty plea can have a lenient
 influence on the trial court's sentencing
 disposition, partly because it reflects a
 defendant's acceptance of responsibility for
 his or her criminal conduct and partly because
 it assists in the efficient disposition of
 cases. [See State v. Barboza, 115 N.J. 415,
 420 (1989).]

 In the present case, the guilty plea was
 part of an agreement that the State would
 recommend a downgrade of defendant's sentence
 to the range imposed on second-degree
 offenses. Thus, the agreement itself in some
 measure defines the mitigating effect of the
 plea on the court's discretionary decision
 whether to downgrade the sentence.

 The sentencing judge in the case before us did not discuss

these considerations in rejecting the plea term requiring

defendant be sentenced as if for a third-degree offense. The

considerations are relevant, but were omitted here presumably due

to inadvertence. Defendant's trial counsel failed to call the

trial court's attention to these omissions at sentencing.

Nonetheless, we have elected to deal with the legal consequences

of those omissions now, on direct appeal, rather than to leave

them to a future petition for post-conviction relief. Accordingly,

we vacate defendant's sentence and remand this matter to the trial

court for further proceedings consistent with this opinion. If,

after due consideration of all relevant factors, the court rejects

 15 A-0369-15T3
the plea term requiring defendant be sentenced as if for a third-

degree offense, then the court should afford defendant the

opportunity to withdraw his plea.

 Affirmed in part, vacated in part, and remanded for further

proceedings consistent with this opinion. We do not retain

jurisdiction.

 16 A-0369-15T3