**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3081-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LIVIO A. MORALES,

     Defendant-Appellant.

_____

Submitted March 24, 2021 – Decided May 3, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 09-03-0658.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Livio A. Morales appeals from a February 3, 2020 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm in part and reverse in part.

I.

We derive the following facts from the record. On January 13, 2008, defendant fatally shot Severino Cepeda in Englewood. Defendant gave a statement to law enforcement that same day. Defendant claimed that he and his fiancée, co-defendant Patricia Pichardo, were approached by her ex-husband Cepeda while walking in a park. Defendant stated that Pichardo said, "It's my ex[-]husband. He's going to kill us." Defendant also claimed that Cepeda yelled in Spanish, "I'm going to kill you both," and then reached into his trousers—using his left hand to lift his jacket and extending his right hand towards his waistband. Defendant stated that he reacted by pulling out a handgun and firing three times at Cepeda, which resulted in Cepeda's death. He claimed that he was carrying a gun because he believed his life was in danger. Defendant mentioned that the day before the incident he received a call from Cepeda, who told him, "I missed you"; defendant thought Cepeda's statement referred to a recent stabbing that occurred at defendant's workplace, which defendant believed was originally targeted at him.

A-3081-19

A police report from the same date reveals that a witness saw "two men standing to the right of the bridge [in the park] and a female standing on the pavement steps away from the two men. The victim Severino Cepeda fell to the ground as the gun man [Livio] Morales continued to shoot the victim." Another witness explained that she saw the victim fall to the ground after hearing the first "pop" and then "she heard a couple of more shots, as the man laid on the ground." A third witness reported that "he saw two men arguing near the entrance of the bridge. He stated the gun man shot multiple times at the victim's body[,] which fell to the ground."

Pichardo initially told police that Cepeda had placed his hand in his waistband and pulled out a knife. She later admitted that her statement to police was false. In fact, no knife was ever recovered from Cepeda's body or the scene.

On March 31, 2009, a Bergen County grand jury returned an indictment that charged defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count one), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count two).[1]

---

[1] Counts three and four charged co-defendant Pichardo with fourth-degree obstruction, N.J.S.A. 2C:29-1(a), and third-degree hindering, N.J.S.A. 2C:29-3(a)(7). Pichardo is not part of this appeal.

Francis Meehan represented defendant during almost the entire pendency of this case—for six years and eight months. During that time, defendant met with Meehan numerous times to discuss the case, including the issues of self-defense and insanity. Because Meehan retired just before defendant entered into the plea agreement, Robert M. Kalisch was appointed to represent him.

On September 16, 2014, defendant entered into a plea agreement and executed a "guilty plea stipulation." The stipulation stated:

> First[,] I waive any psychiatric or insanity defense. Second, the facts of the case are as follows. I was walking the park in Englewood with my fiancée, Patricia Pichardo on January 13, 2008. Severino Cepeda, whom I did not know, approached toward us.
>
> Without regard for human life and under circumstances showing extreme indifference for said human life, I drew a Colt .45 pistol that I was carrying, and shot Severino Cepeda numerous times, causing his death.

The next day, defendant pled guilty to an amended charge of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), in exchange for a recommended sentence of a twenty-year term, subject to the parole ineligibility and parole supervision imposed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and the dismissal of count two.

A-3081-19

During the plea hearing, defendant confirmed that he had reviewed discovery with Meehan. Defendant confirmed that he agreed to plead guilty while still represented by Meehan and before Kalisch became involved. He also confirmed that, prior to entering into the plea agreement, he reviewed all the questions on the plea agreement form with Kalisch. Defendant further confirmed that he was satisfied with both Meehan and Kalisch's representation.

During the plea colloquy, the judge specifically asked defendant whether he reviewed possible defenses with both Meehan and Kalisch, including an insanity defense. Defendant answered in the affirmative and acknowledged he was competent. The judge also noted that defendant stipulated to a forensic report, which revealed defendant was competent to stand trial so long as he continued taking his medications. In sum, defendant waived any claim to self-defense and insanity.

Towards the end of the colloquy, defendant confirmed he committed first-degree aggravated manslaughter on January 13, 2008. He acknowledged that he voluntarily initialed and signed the plea agreement and guilty plea stipulation forms because he was, in fact, guilty. Defendant understood that the State agreed to recommend a twenty-year term of imprisonment at sentencing. He also understood his sentence would be subject to NERA, which required him to

serve eighty-five percent of his prison term before being eligible for parole, and a five-year parole term. Defendant acknowledged that he would have to serve seventeen years before being eligible for parole.

Defendant also understood that, by pleading guilty, he would waive his right to trial and to have any other pre-trial motions heard. At the conclusion of the plea hearing, defendant had no questions for the court or his attorney.

On November 7, 2014, defendant appeared for sentencing. The prosecutor did not request the court to apply any aggravating factors. Trial counsel asked defendant whether he stood by his guilty plea to aggravated manslaughter and to confirm that he was "not alleging a defense of self-defense." Defendant answered both questions, "[c]orrect." Without requesting the court to apply any mitigating factors, counsel asked the court to impose the recommended sentence and "honor the plea agreement." Defendant was not afforded the opportunity to allocute.

The judge found aggravating factor nine, the need to deter "defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9), and mitigating factor seven, "no history of prior delinquency or criminal activity," N.J.S.A. 2C:44-1(b)(7). The judge did not state the weight given to either factor or qualitatively balance the factors.

A-3081-19

Defendant was sentenced in accordance with the plea agreement to a twenty-year NERA term with count two being dismissed. Other than noting it was the recommended sentence, the judge did not give any other reasons for imposing the twenty-year term. Defendant did not appeal his conviction or sentence.

On May 14, 2019, defendant filed a pro se PCR petition. Counsel was assigned to represent him. In October 2019, defendant filed a supporting certification and an amended petition. Defendant claimed trial counsel was ineffective by: (1) failing to pursue a claim of self-defense; (2) pursuing a psychiatric defense instead of self-defense and encouraging defendant to go along with the defense when in fact no psychiatric illness existed; and (3) and failing to appeal his sentence. On appeal, he additionally argues that trial counsel was ineffective by failing to argue mitigating factors at sentencing.

Defendant alleges that he "had a claim of self-defense as [he] reasonably believed the victim was going to pull a gun and kill [his] girlfriend or [him] but Mr. Meehan believed it would be better if he tried a psychiatric [defense]." Defendant asserted that he "would not have pled guilty had [his] attorney raised a claim of self-defense." He explained he "only met with Mr. Meehan a few times and [he] only met Mr. Kalisch the night before [he] entered [into the] plea

7

agreement." Defendant claimed that he pled guilty to manslaughter "out of frustration that [his] case had dragged on for six years."

The PCR court heard oral argument on December 16, 2019. Defendant requested an evidentiary hearing, which the State opposed. The judge issued a February 3, 2020 order and nineteen-page written decision denying defendant's petition without an evidentiary hearing. The judge determined that defendant was not entitled to an evidentiary hearing because he failed to establish a prima facie case of ineffective assistance of counsel. He found "there [were] no facts outside of the trial record that support [defendant's] claims; rather, his arguments amount to bald assertions" that counsel was ineffective. The judge noted defendant "completed a plea form and confirmed under oath . . . that he committed first-degree aggravated manslaughter" and acknowledged that he understood the recommended sentence was a twenty-year NERA term.

The judge further found that defendant's claim that trial counsel's decision to forgo an affirmative defense of self-defense violated the Sixth Amendment was belied by the record. The judge concluded "the evidence demonstrate[d] that trial counsel's decision not to pursue an unsubstantiated claim of self-

defense was well within objectively reasonable professional standards required by Strickland's[2] performance prong." The judge explained:

> [Defendant's] statement that he and his wife were threatened by Mr. Cepeda is directly contradicted by the physical evidence and an eyewitness. Additionally, Ms. Pichardo, who had originally claimed that Mr. Cepeda had put his hand in his waistband and pulled out a knife, changed her story and admitted that she had falsely claimed to have seen Mr. Cepeda draw a weapon. The record also reveals that no knife - or any weapon - was recovered from Mr. Cepeda's body. In light of these facts, the [c]ourt finds trial counsel's decision not to raise an affirmative self-defense claim as an objectively reasonable strategy. Because the first prong of Strickland cannot be met, [defendant's] ineffective assistance of counsel claim must fail.
>
> However, even if trial counsel's decision not to raise an affirmative self-defense claim failed to satisfy prevailing professional norms, the [c]ourt finds that the decision does not meet the second prejudice prong under Strickland. The facts illustrate that it is unlikely that a jury would have concluded that [defendant] shot Mr. Cepeda multiple times based on a reasonable fear of serious bodily injury or death, particularly since [defendant's] version of events is directly contradicted by Ms. Pichardo and an eye[]witness, and [defendant] continued firing after Mr. Cepeda had fallen to the ground. Because [defendant] would not have successfully raised an affirmative self-defense claim, . . . [defendant] fails to demonstrate that the outcome of his case would have been different if his trial counsel had tried his case based on self-defense.

---

[2] Strickland v. Washington, 466 U.S. 668, 688 (1984).

The judge also rejected defendant's claim that investigation of a psychiatric defense constituted ineffective assistance of counsel. The judge reasoned:

> The record shows that [defendant] admitted to his mental health issues during his pre-sentence interview, and two of the medical evaluations revealed [defendant's] delusional and paranoia disorders. Moreover, [defendant] had falsely stated that he was a federal agent, and members of his family corroborated that he had made these delusional claims in the past. The defense's claims amount to mere speculative deficiencies in representation. [State v. Fritz, 105 N.J. 42, 64 (1987)]. Therefore, the record demonstrates that trial counsel acted reasonably in pursuing a mental health defense in [defendant's] case.

Lastly, the judge addressed defendant's claim that trial counsel failed to file a direct appeal of defendant's sentence. The judge found that not filing an appeal "was not objectively unreasonable based on prevailing professional norms." He noted that defendant did not "cite any of the three instances when the Appellate Division would not affirm a trial court sentence: (1) sentencing guidelines were violated; (2) aggravating and mitigating factors were not based upon competent and credible evidence; or (3) the sentence was clearly unreasonable." Moreover, because defendant was sentenced in accordance with the plea agreement, the sentence "is presumed to be reasonable." The judge noted trial counsel ensured defendant "avoided the maximum penal exposure"

10

for murder. He concluded defendant cannot demonstrate that "his sentence would have been different if his trial counsel had followed through with an appeal."

This appeal followed. Defendant argues:

> DEFENDANT RECEIVED INEFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR COUNSEL'S FAILURE TO ADEQUATELY INVESTIGATE A DEFENSE OF SELF-DEFENSE, AND FOR FAILING TO ARGUE MITIGATING FACTORS OR FILE A SENTENCE APPEAL.
>
> (a) Applicable Law.
>
> (b) Defendant Received Ineffective Assistance For Counsel's Failure To Conduct A Minimally Adequate Investigation Into A Claim Of Self-Defense.
>
> (c) Defendant Received Ineffective Assistance For Counsel's Failure To Argue Mitigating Factors And File An Appeal Of His Sentence.

## II.

"The Sixth Amendment of the United State Constitution and Article I, paragraph 10 of the New Jersey Constitution require that a defendant receive 'the effective assistance of counsel' during a criminal proceeding." State v. Porter, 216 N.J. 343, 352 (2013).

11

When a guilty plea is involved, a defendant must satisfy two criteria to set aside the plea based on ineffective assistance of counsel. State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009). The defendant must demonstrate that "(i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" Ibid. (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The defendant must also show that doing so "would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). Accord Nuñez-Valdéz, 200 N.J. at 139.

Rule 3:22-10(b) reflects the case law regarding the defendant's right to an evidentiary hearing. It provides:

> A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of post-conviction relief, a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief. To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the

facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.

[R. 3:22-10(b).]

"Defendant may not create a genuine issue of fact, warranting an evidentiary hearing, by contradicting his prior statements without explanation." State v. Blake, 444 N.J. Super. 285, 299 (App. Div. 2016).

To determine whether a prima facie claim of ineffective assistance of counsel is present, the claim must be evaluated under the two-prong Strickland test where "a reviewing court must determine: (1) whether counsel's performance 'fell below an objective standard of reasonableness,' . . . and if so, (2) whether there exists a 'reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" State v. Castagna, 187 N.J. 293, 313-14 (2006) (quoting Strickland, 466 U.S. at 694 (internal citation omitted)).

To establish a prima facie case of ineffective assistance of counsel, defendant "must do more than make bald assertions" that counsel's performance was substandard. Porter, 216 N.J. at 355 (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). "Rather, defendant must allege specific facts and evidence supporting his allegations." Ibid. "However, a defendant is not entitled to an evidentiary hearing if the 'allegations are too vague, conclusory,

or speculative. . . .'" Ibid. (quoting State v. Marshall, 148 N.J. 89, 158 (1997)). "Thus, when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid. (quoting Cummings, 321 N.J. Super. at 170). Accord R. 3:22-10(c).

As the PCR court did not conduct an evidentiary hearing on the claims that defendant raises in this appeal, we "conduct a de novo review." State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018) (quoting State v. Harris, 181 N.J. 391, 421 (2004)).

A.

Defendant claims that trial counsel was ineffective by failing to conduct an adequate investigation of defendant's claim of self-defense. We disagree.

Defense counsel has a duty to conduct a reasonable investigation or to make reasonable decisions that a specific investigation is unnecessary. State v. Chew, 179 N.J. 186, 217 (2004). Defense counsel neglecting to conduct an adequate pre-trial investigation can give rise to an ineffective assistance of counsel claim. Porter, 216 N.J. at 350, 357 (finding that submitting a certification with specific facts and affidavits from two witnesses established a

prima facie case that counsel performed an inadequate investigation (citing Preciose, 129 N.J. at 456-58, 464)).

Self-defense is a recognized defense to homicide. N.J.S.A. 2C:3-4(a) provides "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." Here, the evidence demonstrates that defendant did not have a reasonable belief that deadly force was immediately necessary to protect himself. The victim was unarmed. Defendant shot him multiple times. The shooting continued even after the victim fell to the ground. The eyewitnesses, including Pichardo, undermined defendant's version of the incident.

Imperfect self-defense, which is defined as "an honest but unreasonable belief" in the need to defend oneself, is not recognized in New Jersey. State v. Bowens, 108 N.J. 622, 630-31 (1987). An example of imperfect self-defense is "the overreaction in self-defense to aggressive or threatening conduct, e.g., shooting to kill an unarmed attacker who has fallen to the ground." Id. at 633. "That person may not have committed murder purposely or knowingly but may be guilty of one of the forms of manslaughter . . . ." Ibid. In such circumstances,

imperfect self-defense would serve to reduce a murder to aggravated manslaughter, defined as "recklessly caus[ing] death under circumstances manifesting extreme indifference to human life. . . ." N.J.S.A. 2C:11-4(a)(1).

That is precisely what occurred here. The plea agreement negotiated by trial counsel resulted in defendant's murder charge being reduced to aggravated manslaughter. Defendant has not demonstrated a reasonable likelihood that proceeding to trial on a claim of self-defense would have resulted in an outcome more favorable than a conviction for aggravated manslaughter.

Moreover, during the sentencing hearing, defendant confirmed that he stood by his guilty plea and was not alleging a defense of self-defense.

## B.

Defendant's contention that trial counsel was ineffective by pursuing an insanity defense lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

## C.

We next address defendant's claim that trial counsel was ineffective by failing to file a direct appeal of defendant's sentence. In compliance with Rule 3:22-10(c), defendant submitted a certification stating that after sentencing, he "asked [his] attorney to appeal the case and he did not do so."

In determining whether trial counsel was constitutionally ineffective by not filing a notice of appeal, a trial court must first decide whether the defendant requested trial counsel to appeal his conviction or sentence. A defendant who requested that an appeal be filed "is not required to show he 'might have prevailed' in his forfeited appeal. . . ." State v. Jones, 446 N.J. Super. 28, 33 (App. Div. 2016) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)). "In defining the reach of the Sixth Amendment, the Supreme Court has held that 'a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.'" Id. at 32 (quoting Flores-Ortega, 528 U.S. at 477). The failure to file a notice of appeal contrary to a defendant's stated desire to appeal "cannot be labeled a strategic decision; 'filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.'" Ibid. (quoting Flores-Ortega, 528 U.S. at 477). "[P]rejudice is presumed when counsel has failed to file an appeal requested by a defendant . . . ." Id. at 37.

On the other hand, "when a defendant has not conveyed his wishes regarding the filing of an appeal . . . we consider 'whether counsel's assistance was reasonable considering all the circumstances,' and whether counsel's deficient performance 'actually cause[d] the forfeiture of the defendant's

17

appeal.'"   Jones, 446 N.J. Super. at 33-34 (second alteration in original) (citations omitted).

Here, without first determining whether defendant requested trial counsel to file an appeal of his sentence, the judge found that not filing an appeal "was not objectively unreasonable based on prevailing professional norms."   The judge then considered the second prong under Strickland—whether defendant was prejudiced by the failure to file an appeal.   The judge concluded that defendant had "not proffered any evidence demonstrating that his sentence was unreasonable.   He fail[ed] to show how trial counsel acted below professional norms in the face of the futility of appealing his sentence."

The State does not dispute that defendant told his trial counsel to file an appeal.   Accordingly, an evidentiary hearing on this issue is not required. "Flores-Ortega holds that the Sixth Amendment alone demands that the defendant receive the appeal to which he was entitled but which was forfeited because his trial attorney failed to heed his direction."   Jones, 446 N.J. Super. at 37 (citing Flores-Ortega, 528 U.S. at 484).

Because the PCR judge did not apply the principles enunciated in Flores-Ortega and Jones, we reverse the denial of PCR as to the failure to file an appeal and exercise original jurisdiction in permitting defendant the right to file a notice

of appeal, seeking review of his sentence, within forty-five days from the date of this opinion as within time. See id. at 37-38. See also State v. Carson, 227 N.J. 353, 355 (2016) (summarily ordering that the defendant who was deprived of his right to appeal may file an appeal of his conviction and sentence within forty-five days as within time).

D.

Finally, we briefly address defendant's claim that trial counsel was ineffective by failing to argue that mitigating factor three, "defendant acted under a strong provocation," N.J.S.A. 2C:44-1(b)(3), and four, "substantial grounds tend[ed] to excuse or justify . . . defendant's conduct, though failing to establish a defense," N.J.S.A. 2C:44-1(b)(4), applied. He contends that trial counsel's failure to argue that defendant's significant mental health issues tended to excuse his conduct resulted in the trial court imposing an excessive sentence.

We recognize that "where mitigating factors are amply based in the record before the sentencing judge, they must be found." State v. Dalziel, 182 N.J. 494, 504 (2005). Additionally, defense counsel retains and has the obligation to exercise the "unfettered right to argue in favor of a lesser sentence than that contemplated by the negotiated plea agreement." State v. Briggs, 349 N.J. Super. 496, 501 (App. Div. 2002). Indeed, our Supreme Court has found that

19

counsel's "failure to present mitigating evidence or argue for mitigating factors was ineffective assistance of counsel—even within the confines of the plea agreement." State v. Hess, 207 N.J. 123, 154 (2011).

The trial court found aggravating factor nine and mitigating factor seven but failed to qualitatively weigh or balance those factors. See State v. Randolph, 210 N.J. 330, 348 (2012) ("Proper sentencing thus requires an explicit and full statement of aggravating and mitigating factors and how they are weighed and balanced."); State v. Towey, 114 N.J. 69, 84 (1989) (criticizing "abbreviated discussion of the aggravating and mitigating factors [as] not reflect[ing] the qualitative weighing process contemplated by the Code"). Defendant was sentenced in accordance with the plea agreement to a twenty-year NERA term, which is exactly mid-range for first-degree aggravated manslaughter. See N.J.S.A. 2C:11-4(c) (imposing an ordinary term of imprisonment between ten and thirty years). However, the judge is not bound by the negotiated recommended sentence. State v. Warren, 115 N.J. 433, 446-49 (1989).

In addition, the sentencing transcript reveals that defendant was not afforded the opportunity to allocute before his sentence was imposed. This was a clear violation of Rule 3:21-4(b), which states: "Before imposing sentence[,] the court shall address the defendant personally and ask the defendant if he or

20

she wishes to make a statement in his or her own behalf and to present any information in mitigation of punishment. The defendant may answer personally or by his or her attorney." "Thus, when a trial court fails to afford a defendant the opportunity to make an allocution, in violation of Rule 3:21–4(b), the error is structural and the matter must be remanded for resentencing without regard to whether there has been a showing of prejudice." State v. Jones, 232 N.J. 308, 319 (2018) (citing State v. Cerce, 46 N.J. 387, 396-97 (1966)).

However, "[t]he right to make a statement in allocution is not constitutionally guaranteed . . . but it is a common-law right of the criminal defendant." State v. DiFrisco, 137 N.J. 434, 478 (1994) (citing State v. Zola, 112 N.J. 384, 428-29, 431-32 (1988)). Therefore, the failure to invite the defendant to speak at sentencing does not render the sentence illegal. Cerce, 46 N.J. at 396. Accordingly, it "is not a valid ground for [PCR]" and is "raisable only on direct appeal from the conviction." Ibid.

Because we are permitting defendant to file a direct appeal of his sentence, we do not decide whether counsel was ineffective for failing to argue mitigating factors three and four. We also do not decide the impact of the failure to afford defendant the right to allocute. Those issues should be addressed in the direct appeal. We express no opinion as to the likelihood of success on direct appeal.

21

## III.

In summary, we are satisfied that defendant did not establish a prima facie case in support of PCR on his claims that trial counsel was ineffective for failing to investigate and pursue a defense of self-defense or by initially pursuing an insanity defense. The judge properly found those claims to be without merit and did not warrant an evidentiary hearing.

We reach a different result on defendant's claim that counsel failed to file an appeal of his sentence. Because the State has not argued that defendant did not direct trial counsel to appeal his sentence, defendant's certification that he "asked [his] attorney to appeal the case" is unrebutted. Therefore, an evidentiary hearing is not required. We exercise original jurisdiction in permitting defendant the right to file a notice of appeal, seeking review of his sentence, within forty-five days from the date of this opinion. As part of that appeal, defendant may raise the failure to afford defendant the right to allocute and the other sentencing issues raised in his petition.

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION